904 P.2d 509

Michael MONIZ, Jr., Plaintiff–Appellant,

v.

Noelani FREITAS; John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Governmental Entities 1–10; Doe Partnerships 1–10; Doe Joint Ventures 1–10; Inclusive, Defendants–Appellees.

No. 16882.

Supreme Court of Hawai'i.

Oct. 5, 1995.

James Ireijo and C. Bryan Fitzgerald, on the briefs, Hilo, for plaintiff-appellant Michael Moniz, Jr.

Kenneth A. Ross and Shawn M. Nakoa of Goodsill, Anderson, Quinn & Stifel, on the briefs, Kailua–Kona, for defendant-appellee Noelani Freitas.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiff-appellant Michael Moniz, Jr. appeals from the Third Circuit Court's denial of his "Motion to Withdraw Appeal and Request for Trial De Novo and to Enter Arbitration Award as Final Judgment." Moniz essentially argues that the circuit court erred in denying his motion because it incorrectly concluded that it did not have authority under the Hawai'i Arbitration Rules (HAR)[1] or the Hawai'i Rules of Civil Procedure (HRCP) to grant the relief sought. For the reasons discussed below, we agree with Moniz, vacate the order denying Moniz's motion, and remand for further proceedings.

## I. BACKGROUND

On November 25, 1989, Moniz, a Hawai'i County police officer, attempted to arrest defendant-appellee Noelani Freitas while she was stopped at a traffic light in Kailua–Kona for "driving with an open vessel," in violation of Hawai'i Revised Statutes (HRS) § 291–3.1(b) (1985).[2] As far as we can glean from the record, Moniz was on foot at the time he approached Freitas and apparently was not in police uniform. Freitas admits having an open beer can on the front seat. When Freitas saw Moniz, she drove away in an apparent attempt to flee. Moniz gave chase, managed to jump onto the bed of Freitas's pick-up truck, and eventually arrested Freitas.[3] During the incident, Moniz allegedly injured his knee, the same knee that he had injured nine days earlier. On August 9, 1991, Moniz filed the instant personal injury action against Freitas for damages. The main issue was the cause of Moniz's knee injury.

The remaining salient facts are disputed. Moniz claims that, while on duty as a police officer on the date of the incident, he approached Freitas's vehicle and identified himself as a police officer. Moniz asserts that,

1. This opinion deals with the HAR in effect on December 17, 1992. The rule that is primarily at issue in this appeal, HAR Rule 22, was amended effective February 1, 1995, to clarify that withdrawals of appeals/requests for trial *de novo* are permitted in specified circumstances. *See infra* note 4.

2. HRS § 291–3.1(b) provides in part that "[n]o person shall possess, while operating a motor vehicle upon any public street, road, or highway, any bottle, can, or other receptacle containing any intoxicating liquor which has been opened[.]"

3. The record does not reflect the result of the open-vessel charge.

without warning, Freitas attempted to flee in her vehicle and that he climbed into the bed of the truck in an attempt to stop her. Freitas then accelerated the truck, causing Moniz to lose his balance and fall onto the bed of the truck, thereby injuring his knee.

Freitas claims that Moniz approached the passenger side of her vehicle and told her to pull over. Freitas also claims that Moniz did not display his police badge and looked like a teenager. She contends that she fled for her own safety because she thought Moniz was a "nut." According to Freitas, it was only after Moniz aimed a gun at her head, but did not pull the trigger, that she realized that Moniz was actually a police officer.

The civil suit was referred to the Court Annexed Arbitration Program (CAAP).[4] On June 25, 1992, a CAAP arbitrator awarded Moniz damages totalling $35,100 (special damages of $6,677.85, general damages of $28,322.15, and punitive damages of $100). Apparently not satisfied with the CAAP award, Moniz timely filed a notice of appeal and request for trial *de novo* pursuant to HAR Rule 22.[5] Freitas did not file a Rule 22 notice of appeal.

Discovery then proceeded under the HRCP. Although the record is unclear as to the specifics, at some point during discovery, a letter from John Bellatti, M.D., one of

Moniz's treating physicians, dated July 22, 1992 (approximately a month *after* the arbitrator issued the $35,100 award), surfaced. In the letter, Dr. Bellatti purportedly apportioned Moniz's injuries 100% to a prior incident and 0% to the Freitas incident. Such evidence was unfavorable to Moniz's case against Freitas because the primary issue was whether Moniz's injuries were legally caused by Freitas's negligence.

On October 29, 1992, Moniz filed a motion for partial summary judgment, seeking to have the court declare "as a matter of law, that should [Moniz] dismiss his appeal to an [a]rbitration [a]ward filed herein, that [Freitas] and/or her insurer is liable to pay said [a]rbitration [a]ward filed herein forthwith." Moniz argued that the "primary basis" for appealing the arbitration award "was to make certain that full policy limits of [Freitas's] insurance would be paid in order to allow [Moniz] to seek further recovery under his own 'underinsurance' automobile policy." Because Moniz had determined that the applicable policy limit was $35,000 and that Freitas was judgment proof, there was "no further reason to continue to appeal the arbitration award herein."

In opposition, Freitas argued, *inter alia*, that "the real reason behind [Moniz's] consideration of withdrawal of the appeal is the

---

4. HAR Rule 1 provides:
 **THE COURT ANNEXED ARBITRATION PROGRAM.** The Court Annexed Arbitration Program (the Program) is a mandatory, non-binding arbitration program, as hereinafter described, for certain civil cases in the State of Hawaii.

5. HAR Rule 22 provided in pertinent part:
 **REQUEST FOR TRIAL *DE NOVO*.**
 (A) Within twenty (20) days after the award is served upon the parties, any party may file with the clerk of the court and serve on the other parties and the Arbitration Administrator a written Notice of Appeal and Request for Trial *De Novo* of the action.
 (B) After the filing and service of the written Notice of Appeal and Request for Trial *De Novo*, the case shall be set for trial pursuant to applicable court rules.
 As previously noted, Rule 22 was amended, effective February 1, 1995 (by order of this court dated December 21, 1994), to add, among other provisions, the following:
 (D) After a written Notice of Appeal and Request for Trial *De Novo* has been filed and

served, it may not be withdrawn except by stipulation of all remaining parties or by order of the Arbitration Judge. The Arbitration Judge shall not allow withdrawal of a Notice of Appeal and Request for Trial *De Novo* over objection of any non-appealing party but may order that an objecting party be deemed an appealing party for purposes of these rules. The Arbitration Judge in allowing a withdrawal may do so upon such terms and conditions as the Court deems proper, including an order that the appealing party pay the attorneys' fees and costs incurred by non-appealing parties after service of the Notice of Appeal and Request for Trial *De Novo*. In the event a Notice of Appeal and Request for Trial *De Novo* is withdrawn pursuant to this rule and no other Notice of Appeal and Request for Trial *De Novo* remains, judgment shall be entered in accordance with Rule 21.
 Because the amendment was not retroactive, we apply the old version of Rule 22. Nevertheless, the reasoning in this opinion is instructive in interpreting the amendment as well.

detrimental discovery which was had after the Notice of Appeal was filed," specifically referring to Dr. Bellatti's letter of July 22, 1992. The court denied Moniz's motion.

Thereafter, on December 17, 1992, Moniz filed a "Motion to Withdraw Appeal and Request for Trial De Novo and to Enter Arbitration Award as Final Judgment," seeking to have the CAAP award of $35,100 entered in his favor rather than proceed to trial. The circuit court denied the motion on the ground that it had no authority to reinstate the CAAP award. Although Moniz had brought the motion exclusively under the HAR, the court noted that, even if the motion were made pursuant to HRCP Rule 41,[6] it had no authority to affirm the arbitration award. The court then granted leave to file the instant interlocutory appeal.

## II. STANDARD OF REVIEW

[1, 2] The issue before us is whether the circuit court had the authority to allow Moniz to withdraw the appeal and request for trial de novo and to reinstate the CAAP award of $35,100. We apply principles of statutory construction when interpreting the HAR. *Keaulii v. Simpson*, 74 Haw. 417, 421, 847 P.2d 663, 666, *reconsideration denied*, 74 Haw. 650, 853 P.2d 542, *cert. denied*, — U.S. ——, 114 S.Ct. 61, 126 L.Ed.2d 31 (1993).

6. HRCP Rule 41 provides, in pertinent part:
**DISMISSAL OF ACTIONS.**
**(a) Voluntary Dismissal: Effect Thereof.**
. . . .
(2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule [regarding dismissal by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper[.]

7. HAR Rule 2 provides:
**INTENT OF PROGRAM AND APPLICATION OF RULES.**
(A) The purpose of the [CAAP] is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters to be designated by the Judicial Arbitration Commission.
(B) These rules shall not be applicable to arbitration by private agreement or to other forms of arbitration under existing statutes, policies and procedures.
(C) These arbitration rules are not intended, nor should they be construed, to address every issue which may arise during the arbitration

The interpretation of the HAR is a question of law reviewed under the right/wrong standard. *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 510, 880 P.2d 169, 185 (1994).

## III. DISCUSSION

### A. The CAAP Process and Problems Associated With the Withdrawal of a Request For Trial De Novo

The purpose of the CAAP is "to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters to be designated by the Judicial Arbitration Commission." HAR Rule 2(A).[7] Moreover, the CAAP was established "to reduce delay and costs in the disposition of certain tort actions through mandatory and nonbinding arbitration as an alternative to costly and protracted litigation." Sen. Spec.Comm.Rep. No. 54–86, in 1986 Senate Journal (Special Session), at 29. Once an arbitrator makes an award, a party may file a written notice of appeal and request a trial de novo. HAR Rule 22.[8] After such notice, "the case shall be set for trial pursuant to applicable court rules." HAR Rule 22(B). To discourage unnecessary appeals, HAR Rule 26[9] provides for potential sanctions if

process. The intent of these rules is to give considerable discretion to the arbitrator, the Arbitration Administrator and the Judicial Arbitration Commission. Arbitration hearings are intended to be informal, expeditious and consistent with the purposes and intent of these rules.

8. *See supra* note 5.

9. HAR Rule 26 provides:
**SANCTIONS FOR FAILING TO PREVAIL IN THE TRIAL DE NOVO.**
(A) After the verdict is received and filed, or the court's decision rendered in a trial *de novo*, the trial court may, in its discretion, impose sanctions, as set forth below, against the nonprevailing party whose appeal resulted in the trial *de novo*.
(B) The sanctions available to the court are as follows:
(1) Reasonable costs and fees (other than attorneys' fees) actually incurred by the party but not otherwise taxable under the law;
(2) Costs of jurors;
(3) Attorneys' fees not to exceed $5,000;

an appealing party does not improve upon the arbitration award. "HAR [Rule] 26 sanctions may be imposed to penalize a non-prevailing party whose decision to appeal the arbitration award and pursue a trial *de novo* was unreasonable under the circumstances of the particular case[.]" *Richardson*, 76 Hawai'i at 511, 880 P.2d at 186.

The problem in the present case revolves around the concept of the withdrawal of an appeal/request for trial *de novo* and the nature and extent of the circuit court's discretion to address the circumstances surrounding such withdrawals. Moniz presents two basic arguments in asserting that the circuit court should have allowed him to withdraw his appeal and request for trial *de novo* (and thereby reinstate his CAAP award). First, he stresses that Freitas did not file a corresponding appeal and request for trial *de novo*. Moniz asserts that Freitas's failure to appeal indicates her original satisfaction with the award. Moniz argues that Freitas should not be allowed to "bootstrap" onto his appeal now that evidence favorable to Freitas has surfaced. Moniz points out that in these circumstances Freitas is, in effect, forcing a trial *de novo* without risking sanctions under HAR Rule 26.

Second, Moniz contends that the policies underlying the CAAP would best be met by allowing reinstatement of the arbitration award after a withdrawal of an appeal. If an appeal were withdrawn and the arbitration award then "ripened" into a judgment, the litigation would end. Moniz reasons that his interpretation encourages arbitration and avoids litigation. Moniz further contends that he filed a protective appeal from the award merely to preserve it while investigating whether further litigation was worth pursuing. As previously indicated, Moniz's position is that, having determined that Freitas had no assets to satisfy a larger award, he decided to accept the award and thus sought to withdraw the appeal.

Freitas, on the other hand, contends that, once a CAAP award is appealed, the case exits arbitration and resumes a normal trial track. HAR Rule 22(B). Freitas argues that, once Moniz appealed, it was not necessary for her to appeal, reasoning that the CAAP is a procedure whereby a party "rolls the dice" when appealing from an arbitration award. Freitas submits that allowing Moniz to withdraw his appeal, knowing that the award can be reinstated, would frustrate the goals of the CAAP. Freitas further argues that Moniz could only "withdraw" his appeal from the arbitration award by dismissing the case under HRCP Rule 41, and Rule 41 provides no authority for reinstatement of an arbitration award.

Freitas also emphasizes that no HAR rule allowed [10] an appeal to be withdrawn and a corresponding arbitration award to be reinstated. Freitas maintains that HAR Rule 23(A) [11] provides the exclusive effect of a CAAP award after an appeal—to determine whether an award has been improved upon for purposes of determining sanctions under HAR Rule 26.

Freitas, however, is only partially correct. The purpose of the CAAP is to provide a simplified alternative to a congested trial court docket. After obtaining a CAAP award, the risk of potential sanctions creates a disincentive to appealing and requesting a trial *de novo*. Parties are encouraged to accept the arbitrator's decision, but, if either party is not satisfied with the award, a right to appeal remains. On the other hand, a party can consciously choose not to appeal. Moniz correctly points out that Freitas is

---

(C) Sanctions imposed against a plaintiff will be deducted from any award rendered. Sanctions imposed against a defendant will be added to any award rendered.

(D) In determining sanctions, if any, the court shall consider all the facts and circumstances of the case and the intent and purpose of the [CAAP] Program in the State of Hawaii.

10. As noted earlier, HAR Rule 22, amended effective February 1, 1995, now provides that withdrawals of appeals are permitted in certain circumstances.

11. HAR Rule 23(A) provides:

The clerk shall seal any arbitration award if a trial *de novo* is requested. The jury will not be informed of the arbitration proceeding, the award or about any other aspect of the arbitration proceeding. The sealed arbitration award shall not be opened until after the verdict is received and filed in a jury trial, or until after the judge has rendered a decision in a court trial.

benefiting, perhaps serendipitously, by not having filed a notice of appeal because she is forcing a trial without risking Rule 26 sanctions. Thus, the fact that Freitas did not appeal from the CAAP award on her own behalf is significant.

 Additionally, Freitas's citation of HAR Rule 23 is unavailing. Although a CAAP award may not be publicly disclosed pursuant to Rule 23 until after a trial *de novo*, the judge need not necessarily know the amount of the CAAP award in order to assess whether the circumstances warrant reinstatement. Additionally, in order to facilitate settlement, the parties may waive the confidentiality of the amount of a CAAP award.[12]

We acknowledge the many possible implications, as presented by the parties in this case, surrounding, specifically, motions for withdrawal of a request for trial *de novo* and reinstatement of an arbitration award in the present context as well as similar motions to withdraw in general. We also acknowledge that the potential for gameplaying and abuse is present in the trial *de novo* procedure prescribed by the CAAP process. We therefore take this opportunity to discuss the extent of the trial court's discretion when ruling on a motion to withdraw a request for trial *de novo*. Because of the lack of evidence in the record on appeal regarding the circumstances surrounding the surfacing of the newly-discovered evidence in the present case, we also, for purposes of remand and prospective application in similar situations, detail the options presented by that discretion.

B. *The Trial Court's Discretion and Options*

 When ruling on a motion to withdraw a request for a trial *de novo*, we believe that

the trial court has discretion to exercise at least three options, depending on the circumstances surrounding the motion. The court may: (1) order dismissal of the action, conditioned on the reinstatement of the arbitration award pursuant to HRCP Rule 41(a)(2); (2) reassign "appealing party" status from the original appealing party to the non-appealing party for purposes of the risk of sanctions under HAR Rule 26, pursuant to the court's inherent power, and allow the case to proceed to trial; or (3) deny the motion to withdraw, thereby refusing to reinstate the arbitration award, and allow the case to proceed to trial. We address, in turn, each option and the potential circumstances that we believe would merit the exercise of each option.

1. **Court–Ordered Dismissal Conditioned on Reinstatement of Arbitration Award Pursuant to HRCP Rule 41(a)(2)**

 HRCP Rule 41(a)(2) provides in pertinent part that "[e]xcept [by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and *upon such terms and conditions as the court deems proper*." HRCP Rule 41(a)(2) (emphasis added). A court's imposition of such terms and conditions would be reviewable for an abuse of discretion. *Sapp v. Wong*, 3 Haw.App. 509, 512, 654 P.2d 883, 885 (1982). In imposing conditions, "the court should endeavor to insure that substantial justice is accorded to both parties." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364 (2d ed. 1994), at 278.

In exercising its discretion under Rule 41(a)(2), the trial court will consider the

---

12. Dictum in *Darcy v. Lolohea*, 77 Hawai'i 422, 886 P.2d 759 (App.1994), is not to the contrary. In holding that an appellate court has no jurisdiction over a final judgment stemming from a CAAP award that was not appealed to circuit court, the Intermediate Court of Appeals reasoned, in part, that a *non-appealed* CAAP award serves no function other than in determining whether the circuit judge may award sanctions to a non-prevailing party. "An arbitration award cannot be publicly disclosed until the trial de novo is completed, HAR Rule 23(A); and then

only for the purpose of determining what sanctions should be awarded against a non-prevailing party under HAR Rule 25 and Rule 26." *Darcy*, 77 Hawai'i at 427–28, 886 P.2d at 764–65. "Other than serving as a final judgment in cases where no appeal is taken, the import of the rules is that the award ... is only to be employed in determining the sanctions[.]" *Id.* at 428, 886 P.2d at 765. *Darcy* is distinguishable from the present case simply because it dealt with non-appealed, rather than appealed, CAAP awards.

expense and inconvenience to the defendant and will deny the motion if the defendant will be prejudiced seriously by a dismissal. The court will examine the possibility that any harm to the defendant may be avoided by imposing terms and conditions on the dismissal.

*Id.* at 293–96.

In *Keaulii,* we addressed the effect of a party appealing from a CAAP award and, later, once on the trial track, voluntarily dismissing the complaint with prejudice. 74 Haw. at 418, 847 P.2d at 664. The plaintiff in *Keaulii* did not move to dismiss the case until three days before trial was to begin. We held that the trial court could impose HAR Rule 26 sanctions because the order dismissing the case was a "decision rendered in a trial *de novo.*" *Id.* Central to our reasoning was the prejudice to the defendant—the defendant had incurred considerable expense to prepare for the trial, only to have the case dismissed as a result of the plaintiff's motion. *Id.* at 422, 847 P.2d at 666.

■ Consistent with the purposes of the CAAP to "provide a simplified procedure for obtaining a prompt and *equitable* resolution of certain civil matters," HAR Rule 2(A) (emphasis added), we believe that the reinstatement of an arbitration award is a proper condition upon which a trial court may order a dismissal under HRCP Rule 41(a)(2). Accordingly, we hold that it is within the trial court's discretion to so condition a dismissal in appropriate circumstances.[13] However, when imposing such conditions, a trial court should consider the totality of the circumstances consistent with substantial justice, taking into account equitable factors such as prejudice to either party.

Consequently, in the case at bar, the circuit court's exercise of its discretion specifically should be guided by an inquiry into possible prejudice or inequity stemming from the circumstances surrounding the surfacing of the newly-discovered evidence. Although, arguably, the risk of unfavorable evidence surfacing after a request for a trial *de novo* is inherent in the decision to request a trial *de*

*novo* and properly should be borne by the appealing party, some circumstances conceivably could merit the exercise of the trial court's discretion so as to allow the withdrawal of a request and the reinstatement of an arbitration award. For example, court-ordered dismissal of the action conditioned on reinstatement of the arbitrator's award, pursuant to HRCP Rule 41(a)(2), might be appropriate in the present case if further inquiry concerning the circumstances surrounding the discovery of Dr. Bellatti's opinion letter reveals that the non-appealing party was aware of the evidence during the arbitration process. Clearly, a non-appealing party should not be encouraged to withhold such a favorable piece of evidence during an arbitration proceeding in an effort to "sandbag" its opponent during a trial *de novo.* However, in this case, if the court determines that both parties were unaware of Dr. Bellatti's letter, we believe Moniz, who was in a better position to discover the evidence from his own physician, should bear the consequences of its surfacing.

Moreover, when considering equitable factors, such as prejudice to either party, the circuit court's exercise of its discretion should also be guided by an inquiry as to the amount of discovery undertaken subsequent to completion of the arbitration process and/or the amount of time and expense in preparing for trial. *See Keaulii,* 74 Haw. at 422, 847 P.2d at 666.

■ In addition, other situations are possible where a notice of appeal and request for trial *de novo* may be withdrawn and the CAAP award reinstated without frustrating the goals of the CAAP. For example, a trial court would not be deemed to have abused its discretion by ordering dismissal of a case conditioned on the reinstatement of a CAAP award, pursuant to HRCP Rule 41(a)(2), if: (1) the party who filed a protective appeal withdrew the appeal within a short period thereafter; (2) the opposing party did not file its own appeal; and (3) there was no prejudice to the opposing party or other inequitable circumstance.

---

**13.** Such discretion is now codified in HAR Rule 22(D). *See supra* note 5.

### 2. Reassignment of "Appealing Party" Status Pursuant to the Court's Inherent Powers

In *Richardson,* we discussed the nature of the inherent power of the courts to control the litigation process and the circumstances in which we believed a trial court's exercise of its inherent powers would be appropriate. We noted that

> courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them. Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute. *Among courts' inherent powers are the powers to create a remedy for a wrong even in the absence of specific statutory remedies, and to prevent unfair results. The courts also have inherent power to curb abuses and promote a fair process* which extends to the preclusion of evidence and may include dismissal in severe circumstances. It follows that if the trial court has the inherent power to level the "ultimate sanction" of dismissal, it necessarily has the power to take all reasonable steps short of dismissal, depending on the equities of the case. *In particular, the trial court has the inherent power ... to fashion a remedy to cure prejudice* suffered by one party as a result of another party's loss or destruction of critical evidence.

*Richardson,* 76 Hawai'i at 507–08, 880 P.2d at 182–83 (citations and quotation marks omitted) (emphases added); *see also State v. Moriwake,* 65 Haw. 47, 55, 647 P.2d 705, 711–12 (1982) (inherent power to "administer justice" includes power *sua sponte* to dismiss a criminal indictment with prejudice under appropriate circumstances).

■ In accord with the court's inherent power to fashion remedies to curb abuses and to cure any perceived prejudice, we believe that, even prior to the current version of HAR Rule 22(D), the trial court possessed the inherent power to reassign "appealing party" status from one party to the other and allow the case to proceed to trial under appropriate circumstances. If the trial court determines on remand in the present case

that: (1) the circumstances surrounding the surfacing of the newly-discovered evidence indicate that neither party was aware of the ultimately damaging evidence to the appealing party's case; and (2) the non-appealing party in good faith had intended to file a request for trial *de novo* but did not only because the appealing party did, the trial court could properly exercise its inherent powers and reassign "appealing party" status from the appealing party to the non-appealing party. By so reassigning, the non-appealing party's "right" to appeal under HAR Rule 22 would be preserved. By being assigned "appealing party" status, the non-appealing party would also bear the risk of sanctions under HAR Rule 26 if the non-appealing party does not improve upon the arbitration award at trial. Because of the policy of limiting discovery during the CAAP process in order to minimize expenses to the parties, Freitas may not have been aware of Dr. Bellatti's letter until after completion of the arbitration process; thus, under such the circumstances, reassignment may be appropriate.

When exercised by the trial court in the proper circumstances, this option effectively preserves the purposes of the CAAP, in that it does not absolutely preclude a non-appealing party, who genuinely seeks a full trial, from obtaining a full trial, while at the same time preserving the disincentives, in the form of HAR Rule 26 sanctions, to protracted and/or unnecessary litigation that is time-consuming and expensive to all involved, including the judiciary.

### 3. Outright Denial of a Motion to Withdraw a Request for Trial De Novo

■ Finally, in some circumstances, it may be appropriate for the trial court simply to deny an appealing party's motion to withdraw a request for trial *de novo* and to allow the case to continue to trial. As previously noted, the risk of unfavorable evidence surfacing after a request for trial *de novo* has been made is implicit in the making of the request and is properly borne by the "appealing party." Thus, absent other equitable concerns or prejudice to either party as indi-

cated by the examples discussed above (which we note are not exhaustive), the surfacing of evidence unfavorable to the appealing party should not be the sole basis for the grant of a motion to withdraw a request for trial *de novo.* To allow withdrawal under such circumstances would undermine the disincentives of the HAR Rule 26 sanctions and, ultimately, the CAAP in general, by allowing the parties to treat the CAAP process as a "test run." The parties would be encouraged to proceed through the CAAP process merely to assess the strength of their respective cases in the context of the limited discovery procedures of the CAAP. Without the fear of HAR Rule 26 sanctions, dissatisfied parties would be encouraged to appeal the arbitrator's decision in every case, thereby invoking the full discovery provisions of the HRCP along with its accompanying high costs, and, should unfavorable evidence arise, simply withdraw the appeal.

## IV. *CONCLUSION*

Based on the foregoing, we vacate the circuit court's order denying Moniz's motion to withdraw his appeal and remand this case to the circuit court for a determination, in the exercise of its discretion, whether to allow withdrawal of Moniz's request for trial *de novo* and whether to allow reinstatement of the CAAP award. On remand, the court's discretion includes, but is not limited to, the authority to: (1) order dismissal of the action, conditioned on the reinstatement of the arbitration award, pursuant to HRCP Rule 41(a)(2); (2) reassign "appealing party" status from the appealing party to the non-appealing party for purposes of the risk of sanctions under HAR Rule 26, pursuant to the court's inherent power, and allow the case to proceed to trial; or (3) deny the motion to withdraw, thereby refusing to reinstate the arbitration award, and allow the case to proceed to trial.