104 P.3d 912

**Maureen GAP, Plaintiff–Appellee,**

v.

**PUNA GEOTHERMAL VENTURE, Defendant–Appellee,**

**Kenneth W. Carlson, Real Party in Interest–Appellant.**

**No. 25210.**

Supreme Court of Hawai'i.

Dec. 16, 2004.

Kenneth W. Carlson, Real Party in Interest–Appellant, on the briefs, pro se.

Patricia M. NaPier, Lindalee K. Farm, and Donna H. Kalama, on the briefs, Honolulu, for defendant-appellee Puna Geothermal Venture.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Real Party in Interest-appellant Kenneth W. Carlson (attorney for plaintiff-appellee Maureen Gap) appeals from the third circuit court's June 18, 2002 final judgment in favor of defendant-appellee Puna Geothermal Venture (PGV).[1] The circuit court granted PGV's motion for summary judgment as well as PGV's motion for sanctions, attorneys' fees, and costs (against Carlson only), the latter based upon violations of Hawaiʻi Rules of Civil Procedure (HRCP) Rules 11 and 16. On appeal, Carlson argues that the circuit court abused its discretion in granting PGV's motion for sanctions and in requiring him to pay PGV $101,114.57. Carlson does not contest the circuit court's grant of summary judgment in favor of PGV. Based on the following, we vacate the circuit court's judgment sanctioning Carlson and remand to the circuit court for further proceedings.

## I. BACKGROUND

PGV operates a geothermal well field in the District of Puna, in Hawaiʻi County, at which it generates electricity via a number of geothermal wells. Maureen Gap, a Puna resident, filed a lawsuit against PGV on May 31, 1995, alleging that PGV caused or exacerbated her asthma. Specifically, Gap's complaint alleged that PGV's geothermal well field emitted "odors, fumes, and noxious gases"; the complaint further alleged that Gap "has suffered and will continue to suffer physical ailments and damage to her health ... caused and/or aggravated, directly and indirectly, by the aforesaid actions and activities" of PGV. Carlson, Gap's attorney, had represented several individuals in suits against PGV in the past and based the complaint on ultrahazardous activity, negligence and recklessness, and nuisance. The complaint sought: general, special, and punitive damages; costs of suit; pre- and post-judgment interest; and such other legal and equitable relief as the court deemed appropriate. Carlson signed the complaint and filed it with the third circuit court.

At the same time she filed her complaint, Gap (through Carlson) requested that the circuit court exempt Gap's case from the Court Annexed Arbitration Program (CAAP). Carlson based the CAAP exemption request "on the grounds that the action has a damage value far in excess of the jurisdiction limit of $150,000, punitive damages are claimed[,] and[,] if awarded, will be in excess of the jurisdiction amount of the Program" and that "the efficient disposition of this case would not be furthered by arbitration." The CAAP exemption request also stated that "[PGV's] actions in the operation of the geothermal drilling facility may expose it to punitive damages from the conscious, willful and wanton conduct which led to the emission from the well" and that "[d]iscovery is necessary to document the facts supporting damages." Carlson signed the CAAP exemption request and filed it with the third circuit court.

On June 10, 1996, the clerk of the third circuit court issued a notice of proposed dismissal because no pretrial statement was filed within one year after the complaint had been filed. On June 13, 1996, Carlson objected to the proposed dismissal; on June 24, 1996, the circuit court withdrew the notice of proposed dismissal.

On July 2, 1996, Carlson filed a pretrial statement, listing a number of eyewitnesses, lay witnesses, and expert witnesses who would testify at trial regarding PGV's alleged misconduct and the link between this misconduct and Gap's asthma. The pretrial state-

---

1. The Honorable Riki May Amano presided over this matter.

ment also stated that "[m]edical experts will testify regarding the medical causation issue and the related damages." Carlson's pretrial statement listed three expert witnesses on the issue of medical causation: Heajung Ruesing, M.D.; Janette D. Sherman, M.D.; and Marvin Legator, M.D. Carlson stated that Dr. Ruesing would offer "[t]estimony concerning treatment of plaintiff for respiratory conditions related to the geothermal emissions in plaintiff's neighborhood, cost of treatment, future prognosis, training of plaintiff as a nurse and ruling out of other factors as causes." Carlson also stated that Dr. Sherman would provide "[t]estimony concerning her review of medical records and finding[s] on over 100 other similarly exposed individuals in plaintiff's community. She will be asked to review plaintiff's medical records and to give an opinion on the significant contribution causes of that condition." And as to Dr. Legator, Carlson stated that he would give "[t]estimony concerning the health effects to Plaintiff and the surrounding community from exposure to PGV's emissions as based upon the review and analyses of the ongoing health and research study of the community." Carlson signed this document and filed it with the circuit court.

On September 25, 1996, the circuit court held a pretrial conference pursuant to HRCP Rule 16.[2] The court identified the issue of medical causation as the critical issue in the case and set deadlines for the naming of expert witnesses on this issue. The court's subsequent written order required Carlson to "submit the names of the experts for medical causation he intends in good faith to call at trial, on or before October 28, 1996."

On October 24, 1996, Carlson sent PGV a list of five medical causation experts. This list included Dr. Ruesing, Dr. Sherman, and Dr. Legator; the additional two experts were Richard M. Sword, Ph.D. (a psychologist) and Wellman Shrader, M.D. (an allergist). Carlson signed this document and filed a certificate of service with the court, but he did not file the expert witness list itself with the court.

Also on October 24, 1996, Gap (through Carlson) responded to PGV's request for admissions. PGV had sent Carlson a request for admissions on September 26, 1996, in which it asked Carlson to admit or deny the following two statements: "No expert has said Defendant PGV has caused me to sustain physical injuries" and "None of the physical injuries complained of in this lawsuit were caused by [PGV]." In the response, signed by Carlson, Gap denied both these statements. Although Carlson signed this document, he did not file it with the court.

Subsequent events and discovery proceedings revealed that none of the five individuals listed as an expert witness was able to provide sufficient evidence of medical causation. Dr. Sherman informed Carlson in November 1996 that her heavy work schedule would prevent her from evaluating Gap and from serving as an expert witness. Also in November 1996, Carlson learned that Dr. Legator's study would not be complete until after the expert witness deposition cut-off date, such that Dr. Legator would not be able to serve as an expert witness in Gap's case. (According to Carlson, Dr. Legator's study was released sixty days after the deposition cut-off date, such that Dr. Legator was precluded from testifying in Gap's case.) And Dr. Ruesing, Gap's treating physician, informed Carlson by letter on December 9, 1996 that she would testify as a treating physician only; she stated that she would not testify as to medical causation because she was not qualified to do so. The two additional experts included in Carlson's list, Dr. Sword and Dr. Shrader, were similarly unable to provide sufficient evidence demonstrating that PGV caused Gap's asthma. Dr. Sword, a psychologist, admitted that the issue of medical causation was not within his field of expertise (although he was able to opine that Gap had an anxiety disorder based on her *belief* that she was living in an environment with toxic air). Dr. Shrader, an allergist (and Gap's former employer) who did not treat Gap for asthma, stated in a written report dated November 26, 1996 that

---

**2.** At the time of Carlson's alleged misconduct, HRCP Rule 16 was entitled "Pre-trial procedure; formulating issues." HRCP Rule 16 (1995). Rule 16 is discussed in greater detail in Part III(A), *infra*.

"it is my opinion, with quite reasonable medical probability, that Ms. Gapp [sic], like so many of my other patients in Hawaii who lived in Leilani Estates, is suffering from causation and exacerbation of asthma secondary to venting of toxic gases by the PGV geothermal plant." At his subsequent deposition, however, Dr. Shrader offered contradictory testimony. He stated that he did not know where Gap was living when she was first diagnosed with asthma and he did not know the distance between her home and the PGV plant; he also did not know whether there were trees or plants on Gap's property to which she was allergic (which allergies might have caused Gap's respiratory problems and asthma). Dr. Shrader further stated that other factors on the Big Island (such as mold, dust, pollen, mites, vog, or other environmental factors) could play a role in Gap's asthma. When Dr. Shrader was asked directly whether he was able to render an opinion on medical causation to a reasonable degree of medical probability, he responded: "I think it's fair to say that, scientifically, it would be very difficult to draw a conclusion without being presented with more evidence, statistics, as to the episodes of venting and concentrations of $H_2S$ at the time of [Gap's] episodes." In sum, by the end of January 1997 (twenty months after the complaint was filed), Gap did not have an expert witness to testify on the issue of medical causation.

On February 21, 1997, PGV moved for summary judgment because Gap had "failed to produce any evidence on an essential element of her claim, causation." The same day, PGV filed a motion for sanctions, attorneys' fees, and costs (against Carlson only) pursuant to HRCP Rule 11 (then entitled "Signing of pleadings, motions, and other papers; sanctions"[3]), HRCP Rule 37 (then entitled "Failure to make discovery: Sanctions"[4]), Hawai'i Revised Statutes (HRS) § 603–21.9 (entitled "Powers"), and HRS § 607–14.5 (then entitled "Attorneys' fees in civil actions"[5]) because Carlson had "named

five purported experts on medical causation, but failed to retain them or provide them with the basic information to allow them to formulate an opinion with regard to [Gap]." Essentially, PGV argued (and continues to argue) that Carlson filed the complaint and litigated this case without any medical evidence that PGV caused or exacerbated Gap's asthma. PGV argues that Carlson's inadequate investigation caused PGV to incur $101,114.57 in defense costs (attorneys' fees and costs) from October 28, 1996 (the date on which Carlson was obligated to disclose his expert witnesses) to April 2000.

On March 21, 1997, the circuit court heard PGV's motions. The circuit court granted PGV's motion for summary judgment and, on May 27, 1997, entered a written order to that effect. The circuit court did not immediately grant PGV's motion for sanctions; instead, because the issue of whether Carlson had actually retained or consulted with any of the expert witnesses he listed as Gap's medical causation expert witnesses before he formally named them was in dispute, the circuit court asked Carlson for a declaration setting forth the chronology (with specific dates) of Carlson's investigation, including Carlson's "direct contact with the ... doctors you've listed as experts." Carlson submitted this declaration on April 10, 1997.

On October 4, 2000, the circuit court held a conference call with the parties in which it informed the parties that PGV's motion for sanctions would be granted. The circuit court indicated that attorneys' fees and costs would be awarded to PGV for the time period from October 28, 1996 (the date by which Carlson was required to name Gap's expert witnesses on the issue of medical causation) to April 2000. On May 6, 2002, the circuit court issued a written order granting PGV's motion for sanctions against Carlson in the amount of $101,114.57. The circuit court made detailed findings of fact and conclu-

---

3. HRCP Rule 11 was amended effective January 1, 2000, and is now entitled "SIGNING OF PLEADINGS, MOTIONS, AND OTHER PAPERS; REPRESENTATIONS TO COURT; SANCTIONS."

4. HRCP Rule 37 was recently amended and is now entitled "FAILURE TO MAKE OR COOPERATE IN DISCOVERY; SANCTIONS."

5. HRS § 607–14.5 was amended in 1999 and is now entitled "Attorneys' fees and costs in civil actions."

sions of law in support of its sanctions order. With respect to HRCP Rule 11, the circuit court concluded that Carlson violated Rule 11 when he signed five documents (the complaint, the CAAP exemption request, the pretrial statement, the response to requests for admission, and the list of expert witnesses on the issue of medical causation) "because he had not retained nor obtained an expert able and willing to render an opinion that Plaintiff's injuries resulted from Defendant PGV's releasing 'excessive noise, odors and fumes' into Plaintiff's home and yard." The circuit court also concluded that Carlson violated the court's HRCP Rule 16 order requiring Carlson to submit the names of experts " 'he intends in good faith to call at trial, on or before October 28, 1996' ":

> Plaintiff's counsel violated the court's order when he failed to make even minimal contact with any of the experts he named. At a minimum, he should have ascertained their opinions and assessed the evidentiary value thereof. Furthermore, by not taking immediate corrective action upon learning that the proposed experts were unwilling or unable to testify, Plaintiff's counsel caused defense counsel to proceed with discovery and secure its own experts unnecessarily thus leading defense counsel on a very expensive and fruitless wild goose chase.

The circuit court issued its final judgment on June 18, 2002, and Carlson appealed on July 15, 2002.

## II. *STANDARD OF REVIEW*

### A. *HRCP Rule 11 Sanctions*

█ " 'All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard.' " *Canalez v. Bob's Appliance Serv. Ctr., Inc.,* 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999) (quoting *Lepere v. United Pub. Workers,* 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)). " 'The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' " *Id.* at 299, 972 P.2d at 302 (quoting *Lepere,* 77 Hawai'i at 473, 887 P.2d at 1031).

█ Additionally, " 'regardless whether sanctions are imposed pursuant to ... [statute, circuit court rule,] or the trial court's inherent powers, such awards are reviewed for an abuse of discretion.' " *Bank of Hawaii v. Kunimoto,* 91 Hawai'i 372, 387, 984 P.2d 1198, 1213 (1999) (quoting *Enos v. Pac. Transfer & Warehouse, Inc.,* 79 Hawai'i 452, 459 n. 7, 903 P.2d 1273, 1280 n. 7 (1995)) (alteration in original).

### B. *Interpretation of HRCP Rule 16*

█ "When interpreting rules promulgated by the court, principles of statutory construction apply. Interpretation of a statute is a question of law which we review *de novo.*" *State v. Lau,* 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995) (citations omitted).

## III. *DISCUSSION*

Carlson argues that the circuit court erred in sanctioning him. In Part A, we clarify which versions of Rules 11 and 16 apply to Carlson's conduct. In Part B, we hold that the circuit court abused its discretion in ruling that Carlson violated HRCP Rule 11 in signing the complaint, CAAP exemption request, response to request for admissions, and list of experts, but that the circuit court did not abuse its discretion in ruling that Carlson violated Rule 11 in filing his pretrial statement. Finally, in Part C, we offer guidance to the circuit court in setting an appropriate sanction on remand.

### A. *The Versions Of HRCP Rule 11 And HRCP Rule 16 In Effect At The Time Of Carlson's Alleged Misconduct Apply To The Instant Case.*

#### 1. HRCP Rule 16

█ In its order, the circuit court concluded that "Defendant PGV is entitled to reimbursement of reasonable fees and costs from Plaintiff's counsel for violations of Rule 11 and Rule 16." The circuit court appears to have sanctioned Carlson pursuant to the version of HRCP Rule 16 in effect at the time the circuit court issued its order, rather than the version in effect at the time Carlson engaged in the allegedly sanctionable con-

duct: HRCP Rule 16 (1995)[6] (the version in effect at the time of Carlson's alleged violations) did not provide for sanctions, whereas HRCP Rule 16 (2004) (the version currently in effect) does provide for sanctions.[7] Thus, in sanctioning Carlson pursuant to the version of HRCP Rule 16 in effect at the time it issued its order, the circuit court applied the amended version of HRCP Rule 16 retroactively.

The circuit court erred in applying HRCP Rule 16 retroactively. In 1995 and 1996, when Carlson allegedly violated the circuit court's order, Carlson knew or should have known that he could be sanctioned pursuant to HRCP Rule 11, HRCP Rule 26(g) (1995),[8]

6. HRCP Rule 16 (1995), entitled "Pre-trial procedure; formulating issues," provided:

> In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
> (1) The simplification of the issues;
> (2) The necessity or desirability of amendments to the pleadings;
> (3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
> (4) The limitation of the number of expert witnesses;
> (5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;
> (6) Such other matters as may aid in the disposition of the action.
> The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non jury actions or extend it to all actions.

7. HRCP Rule 16 was amended effective January 1, 2000, and is now entitled "PRE-TRIAL CONFERENCES; ·SCHEDULING; MANAGEMENT." This amendment added the following subsection to HRCP Rule 16:

> (f) **Sanctions.** If a party or party's attorney fails to obey a scheduling or pretrial order, . . . or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

8. In 1995 and 1996, HRCP Rule 26, entitled "DEPOSITIONS AND DISCOVERY," provided in relevant part:

> (g) **Signing of Discovery Requests, Responses, and Objections.** Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the request, response, or objection and state his address. The signature of the attorney or party constitutes a certification that he has read the request, response, or objection, and that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response or objection and a party shall not be obligated to take any action with respect to it until it is signed.
> If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

HRCP Rule 26 (1996). Rule 26 was amended in 1997, but part (g) remained unchanged. Rule 26 was again amended effective July 1, 2004; part (g) (still entitled "Signing of Discovery Requests, Responses, and Objections") was changed only slightly. The only relevant change is that Rule 26(g) now provides that sanctions may be available if an attorney makes a certification "without substantial justification," whereas the pre-amendment version of Rule 26 did not include this particular phrase. *See* HRAP Rule 26(g) (2004).

HRCP Rule 37 (1995),[9] and the circuit court's inherent power (as described in HRS § 603–21.9 (1993)[10]). However, Carlson had no notice that he could be sanctioned pursuant to HRCP Rule 16. The change to HRCP Rule 16 was not merely procedural: it altered the parties' substantive rights by specifically empowering the lower courts to award attorneys' fees for violations of the rule.

Hawai'i statutory and case law discourage retroactive application of laws and rules in the absence of language showing that such operation was intended. For example, HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended."[11] This approach to statutory amendments appears to apply with equal force to court rules. For example, in *Moniz v. Freitas*, 79 Hawai'i 495, 497 n. 5, 904 P.2d 509, 511 n. 5 (1995), this court interpreted an amendment to Hawai'i Administrative Rules (HAR) Rule 22 and concluded that "[b]ecause the amendment was not retroactive, we apply the old version of Rule 22." This footnote in *Moniz* implies that, to apply a rule retroactively, the rule must explicitly state that it should be applied retroactively.

Federal case law is often useful in interpreting our own rules. *See Gold v. Harrison*, 88 Hawai'i 94, 104, 962 P.2d 353, 363 (1998) (interpreting HRCP Rule 11 and stating that " '[i]n instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance[ ]' " (quoting *State v. Ontai*, 84 Hawai'i 56, 61, 929 P.2d 69, 74 (1996))). As to the retroactive application of HRCP Rule 16, federal case law suggests that Rule 16 should not be applied retroactively. For example, although the United States Court of Appeals for the Fifth Circuit has stated that " 'to the maximum extent possible, the amended Rules should be given retroactive application[,]' " *Skoczylas v. Fed. Bureau of Prisons*, 961 F.2d 543, 546 (5th Cir.1992) (quoting *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 823 (5th Cir.1967)) (interpreting Fed.R.Civ.P. 15(c)), the Fifth Circuit qualified its statement by acknowledging that a rule would not apply retroactively where "application of the amended rule ... would work a manifest injustice." *Skoczylas*, 961 F.2d at 546 (quoting *Freund v. Fleetwood Enters.*, 956 F.2d 354, 363 (1st Cir.1992)) (internal quotation signals omitted). Similarly, a recent Sixth Circuit decision suggests that HRCP Rule 16 should not be applied retroactively: in analyzing a party's request for sanctions pursuant to Federal Rules of Civil Procedure (FRCP) Rule 37 (which had been amended effective the day after the district court is-

---

**9.** In 1995 and 1996, HRCP Rule 37 (entitled "Failure to make discovery: Sanctions") provided in relevant part:

(c) *Expenses on failure to admit.* If a party fails to admit ... the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves ... the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

HRCP Rule 37 was amended effective July 1, 2004 and contains a number of provisions specifically authorizing sanctions for discovery abuses. *See* HRCP Rule 37 (2004).

**10.** HRS § 603–21.9, entitled "Powers," provides in relevant part:

The several circuit courts shall have power:

....

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may

be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

**11.** In interpreting HRS § 1–3, this court has stated:

The rule is particularly applicable where the statute or amendment involves substantive rights. Substantive rights are generally defined as rights which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past, as distinguished from remedies or procedural laws which merely prescribe methods of enforcing or giving effect to existing rights. Hence, a subsequent amendment involving substantive rights will not be read as operating retrospectively in the absence of a clear legislative expression that such operation is intended.

*Clark v. Cassidy*, 64 Haw. 74, 77, 636 P.2d 1344, 1346–47 (1981) (citations, internal quotation signals, and footnotes omitted).

sued its order [12]), the court held that because "Rule 37(c)(1) did not authorize sanctions for Rule 26(e)(2) violations at the time of the district court proceedings[,] ... the plaintiff could show no basis for sanctions under Rule 37(c)(1)." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 (6th Cir.2002) (footnote omitted).

Sanctioning Carlson pursuant to a rule that was not in effect at the time of his improper conduct would be manifestly unjust because he had no notice that he could be sanctioned pursuant to HRCP Rule 16. Consequently, the circuit court erred in basing its ruling on HRCP Rule 16.

■ Nevertheless, PGV argues that the argument regarding the retroactive application of HRCP Rule 16 is irrelevant because the circuit court has the inherent power, pursuant to HRS § 603–21.9, to sanction an attorney for violating an order of the court. PGV's argument is without merit. "It is well settled that a court may not invoke its inherent powers to sanction an attorney without a specific finding of bad faith." *Bank of Hawaii v. Kunimoto*, 91 Hawai'i 372, 389, 984 P.2d 1198, 1215 (1999). In the instant case, the circuit court did not specifically find that Carlson had acted in bad faith. Consequently, the circuit court's order is not justifiable

based on HRCP Rule 16 or on the circuit court's inherent power to sanction.

Given that the circuit court was not authorized to sanction Carlson pursuant to HRCP Rule 16 and that the circuit court did not make a specific finding of bad faith, we will analyze the circuit court's order as though the circuit court based its award of sanctions on HRCP Rule 11 only.

### 2. HRCP Rule 11

■ HRCP Rule 11, like HRCP Rule 16, was amended effective January 1, 2000, and Carlson argues that this court should apply the amended version of HRCP Rule 11 in reviewing the circuit court's order. Just as the pre-amendment version of HRCP Rule 16 is the appropriate version of that Rule to apply in the instant case, the pre-amendment version of HRCP Rule 11 is also the appropriate version of that Rule to apply in this case.

As an initial matter, the 2000 amendment does not have any apparent effect on whether Carlson's conduct was sanctionable: the substance of both versions of HRCP Rule 11 (*i.e.*, both the pre–2000 and post–2000 versions) provide nearly identical definitions of sanctionable conduct.[13]

(a) **Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken by the clerk unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable *under the circumstances:*

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing

---

12. In contrast, in the instant case, the amended version of HRCP Rule 16 was in effect at the time the circuit court issued its order but was not in effect at the time of the alleged violations.

13. Prior to HRCP Rule 11's amendment effective January 1, 2000, HRCP Rule 11 provided in relevant part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The current version of HRCP Rule 11 provides in relevant part:

As with HRCP Rule 16, we will apply the pre-amendment version of Rule 11 in the instant case. In *Fujimoto v. Au*, 95 Hawai'i 116, 122–26, 19 P.3d 699, 705–09 (2001), this court reviewed the circuit court's HRCP Rule 11 order of attorneys' fees and costs in which all lower court proceedings were completed before the amendments to Rule 11 became effective. Even though this court did not issue its opinion in *Fujimoto* until after HRCP Rule 11 had been amended, this court applied the pre-amendment version of Rule 11 to that case. *Id.* at 152 n. 21, 19 P.3d at 735 n. 21. In the instant case, although the circuit court did not inform the parties that it was granting PGV's motion for sanctions until October 4, 2000 and did not issue its written order until May 6, 2002, all of the activities for which Carlson is subject to sanctions occurred prior to the Rule 11 amendments. Neither party should be penalized because the circuit court failed to rule on the motion for five years. *See also In re Yagman*, 796 F.2d 1165, 1186 (9th Cir.1986) ("It would be unfair to saddle [the attorney subject to sanctions] with the additional responsibility and greater liability mandated by the amended rule [*i.e.*, the post–1983 version of the rule], which only came into being after the complaint was filed."). Therefore, we will apply the pre-amendment version of Rule 11 to this case.

> law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (Last emphasis added.)
>
> Even though the pre-amendment version of HRCP Rule 11 did not include the phrase "under the circumstances," when interpreting the pre-amendment version of HRCP Rule 11, this court held that the circumstances of each case are important in determining whether conduct was sanctionable:
>
> > Whether the investigation was "reasonable" depends on the circumstances of each situa-

**B.** *The Circuit Court Abused Its Discretion In Concluding That Carlson Violated HRCP Rule 11 By Signing The Complaint, CAAP Exemption Request, Response To Request For Admissions, And List Of Experts, But Did Not Abuse Its Discretion In Concluding That Carlson's Pretrial Statement Violated Rule 11.*

The circuit court concluded that Carlson violated HRCP Rule 11 because he "signed the Complaint, Request to Exempt Case from the Court Annexed Arbitration Program, Pretrial Statement, Admissions and Plaintiff's Medical Causation Disclosure ... because he had not retained nor [sic] obtained an expert able and willing to render an opinion" as to medical causation. As discussed in subsection 1, *infra*, the circuit court abused its discretion in concluding that Carlson violated HRCP Rule 11 in filing the complaint and CAAP exemption request because Carlson's pre-filing inquiry was sufficient. As discussed in subsection 2, the circuit court abused its discretion in concluding that Carlson violated HRCP Rule 11 in signing the response to request for admissions and the list of experts because Rule 11 applies only to those documents filed with the court. And as discussed in subsection 3, the circuit court did not abuse its discretion in concluding that Carlson violated HRCP Rule 11 in filing his pretrial statement.

> tion. The reasonableness standard embodied in Rule 11 is flexible and includes the following factors:
>
> > [H]ow much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.
>
> FRCP Rule 11, advisory committee notes.
> *Buck v. Miles*, 89 Hawai'i 244, 250 n. 4, 971 P.2d 717, 723 n. 4 (1999) (alteration in original). *See also* Fed.R.Civ.P. 11 advisory committee's note (1983) ("The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.").

### 1. Complaint and CAAP exemption request

█ Carlson argues that "[b]efore filing the complaint, [his] inquiry found reasonable evidentiary support for the injury claims made by [Gap]" and that he "was not required to first obtain an expert consultation, as part of his inquiry, before filing the complaint." We agree with Carlson and hold that the circuit court abused its discretion in concluding that Carlson violated HRCP Rule 11 in signing the complaint and the CAAP exemption request on May 31, 1995.

Before Carlson signed the complaint and the CAAP exemption request, he contacted Dr. Sherman to investigate Gap's claims. Carlson alleges that he had worked with Dr. Sherman on similar cases in the past; he points to a report issued by Dr. Sherman in 1993 (apparently written at Carlson's request for another one of his cases against PGV), in which Dr. Sherman reviewed a number of medical reports, examined the medical records of 71 individuals (presumably Puna residents), and concluded as follows:

> It is my opinion, within a reasonable degree of medical and scientific certainty, more likely than not, that the pattern of symptoms, especially those of the respiratory system, central nervous system, gastrointestinal system, and skin, as found in this population, has been caused and/or aggravated by exposure to the emissions from the Geothermal development.

Carlson further alleges that, in February 1995, he registered Gap to be part of a health study (measuring the effects of PGV's emissions on the community) being conducted by Dr. Legator and his staff at the University of Texas. The circuit court did not make a specific finding as to whether Carlson contacted Dr. Legator; however, the circuit court did find that Carlson "advis[ed][Gap] to

register with Dr. Legator for an interview and evaluation."

As we have stated, "although an expert opinion may aid the jury, or even be necessary, in its determination of the merits of the case, we decline to hold that HRS § 657–7.3 or HRCP Rule 11 requires the procurement of a favorable expert opinion before a cause of action accrues." *Buck v. Miles*, 89 Hawai'i 244, 251, 971 P.2d 717, 724 (1999). In *Buck v. Miles*, we also explained:

> [U]nder the discovery rule, the statute of limitations begins to run the moment [the] plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter. This being the case, once the plaintiff satisfies the discovery rule, the cause of action has accrued and the plaintiff has the right to file a lawsuit. It also stands to reason that plaintiff's counsel may thereafter file a complaint in compliance with HRCP Rule 11 based upon an inquiry that establishes facts sufficient to satisfy the discovery rule.

*Id.* (citation and internal quotation signals omitted) (second set of brackets in original). Carlson "reviewed the history of the Plaintiff's complaints, and reviewed her medical records, and then correlated her episodes with known incidents of leaks at PGV's Puna site"; he also discussed Gap's case with Dr. Sherman and allegedly had some contact with Dr. Legator or his staff.[14] Given that Carlson was faced with an uncertain end to the limitations period within which Gap could file a claim, Carlson's investigation was reasonable and his filing of the complaint and the CAAP exemption request did not constitute a violation of HRCP Rule 11.[15] *See also Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir.1989) ("As we have noted, it is important that Rule 11 not have the effect of chilling creative advocacy.... Courts should therefore resolve all

---

**14.** The circuit court found that Carlson, in fact, reviewed Gap's medical records, "compar[ed] plaintiff's complaints with 'the known incidents of geothermal leaks at [PGV] from 1991 forward[,] and correlated the leaks and times of plaintiff's symptoms[.]'"

**15.** Indeed, the circuit court's own order seems to support this conclusion: the circuit court award-

ed attorneys' fees and costs to PGV based only on the time period from October 28, 1996 (the date on which Carlson was required to supply his list of expert witnesses) and April 2000, rather than awarding attorneys' fees and costs from the date on which Carlson filed his complaint (May 31, 1995).

doubts in favor of the signer, but should impose sanctions when it is patently clear that a claim has absolutely no chance of success[.]" (Citations and internal quotation signals omitted.)).

### 2. Response to request for admissions and list of experts

■ The circuit court also abused its discretion in concluding that Carlson violated HRCP Rule 11 in signing his response to PGV's request for admissions and his list of expert witnesses because neither of these documents was filed with the court.

■ In 1995 and 1996, HRCP Rule 11 provided that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record[.]"[16] However, Rule 11 may not be invoked unless the pleading, motion, or other paper at issue has been filed with the court. *See, e.g., United States v. Int'l Broth. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) ("Rule 11, perforce, cannot be invoked unless some signed pleading, motion, or other paper is filed."); *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1229 (6th Cir.1989) ("The rule relates to papers filed in court by an attorney, not to questionable attorney conduct in general."); *Adduono v. World Hockey Ass'n,* 824 F.2d 617, 621 (8th Cir.1987) ("The settlement agreement . . . neither was submitted to the court nor reviewed by the court nor incorporated into the court's order of dismissal. Thus, no matter how improper [the attorney's] alleged conduct may have been, Rule 11 is an inappropriate vehicle for reviewing and disciplining such conduct."). *See also Buck,* 89 Hawai'i at 250, 971 P.2d at 723 ("The primary purpose of Rule 11 is to 'set a more demanding standard for establishing the propriety of court *filings* [.]'" (Quoting *Lepere v. United Pub. Workers, Local 646,* 77 Hawai'i 471, 474, 887 P.2d 1029, 1032 (1995).) (Emphasis added.)); *Legault v. Zambarano,* 105 F.3d 24, 27–28 (1st Cir.1997) (holding

that a letter to an opposing party was a "paper" for purposes of FRCP Rule 11 where the attorney writing the letter sent a copy to the presiding judge in the case). The term "paper" does not apply to discovery papers such as Carlson's response to PGV's request for admissions or Carlson's list of expert witnesses; instead, the proper avenue for seeking sanctions for Carlson's conduct (with respect to his response to PGV's request for admissions and his list of experts) would have been either HRCP Rule 26(g) (1995) (which allowed for sanctions for improper conduct surrounding "request[s] for discovery or response[s] or objection[s] thereto") or HRCP Rule 37 (1995) (which allowed for sanctions for failure to make discovery).[17] *See, e.g., Sheets v. Yamaha Motors Corp., U.S.A.,* 849 F.2d 179, 186 (5th Cir.1988) ("Rule 26(g), however, applies exclusively to discovery requests, responses, and objections while Rule 11 has been interpreted by some commentators to apply only to those papers, pleadings, and motions for which other sanction provisions are not applicable."); *In re Yagman,* 796 F.2d 1165, 1187 (9th Cir.1986) ("Sanctions for discovery abuses are governed primarily by Rule 26(g) and Rule 37, rather than Rule 11, of the Federal Rules of Civil Procedure."); *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 555 (N.D.Cal.1987) (stating that "Rule 11 is reserved for those papers, pleadings, and motions for which there are not other applicable sanction provisions, and thus cannot be used to preempt the application of Rule 26(g) to discovery responses and requests" but also stating that "Rule 26 applies exclusively to discovery requests and responses, while Rule 11 applies to *any* paper, pleading, or motion" (emphasis added)); *see also Enos v. Pac. Transfer & Warehouse, Inc.,* 79 Hawai'i 452, 456, 903 P.2d 1273, 1277 (1995) ("Rule 11 does not license a . . . court to sanction any action by an attorney or party that it disapproves of[.]" (Citations and internal quotation signals omitted.) (Al-

---

16. As set forth *supra,* this portion of the current version of HRCP Rule 11 is identical except for the insertion of the word "written." The current version refers to "[e]very pleading, *written* motion, and other paper[.]" HRCP Rule 11 (2004) (emphasis added).

17. Again, the current versions of both HRCP Rule 26 and HRCP Rule 37 also authorize sanctions, but we reference the 1995 versions of both rules for the sake of consistency throughout this opinion.

terations in original.)).[18] Therefore, the circuit court abused its discretion in sanctioning Carlson pursuant to Rule 11 for having signed the response to request for admissions and the list of experts, neither of which was filed in court.[19]

### 3. The circuit court did not abuse its discretion in determining that Carlson violated HRCP Rule 11 in filing his pretrial statement.

 Carlson's pretrial statement, filed on July 2, 1996, stated that "[m]edical experts will testify regarding the medical causation issue and the related damages" and listed Dr. Ruesing, Dr. Sherman, and Dr. Legator as Gap's expert witnesses on the issue of medical causation. We hold that the circuit court did not abuse its discretion in ruling that Carlson did not conduct a reasonable investigation as to Dr. Ruesing and Dr. Sherman. In the remainder of this subsection, we first examine Carlson's investigation as to each of these three doctors, after which we analyze these investigations and conclude that the circuit court did not abuse its discretion in concluding that Carlson's conduct violated HRCP Rule 11.

#### a. Carlson's contacts with Dr. Legator, Dr. Sherman, and Dr. Ruesing

#### i. Marvin Legator, M.D.

Carlson alleges that, in February 1995, he registered Gap to be part of a health study being conducted by Dr. Legator.[20] In June

18. We include this discussion of HRCP Rules 26 and 37 to remind attorneys that they may not circumvent the possibility of sanctions merely by declining to file a document with the court. Although that attorney will not be subject to sanctions pursuant to HRCP Rule 11, that attorney could be subject to sanctions pursuant to HRCP Rule 26, HRCP Rule 37, HRCP Rule 16, and the court's inherent power.

19. PGV's motion for sanctions also alleged that PGV was entitled to sanctions pursuant to HRCP Rule 37 and HRS § 607–14.5 (1993 & Supp. 2003). However, the circuit court did not address HRCP Rule 37 or HRS § 607–14.5, and PGV's answering brief does not raise either Rule 37 or HRS § 607–14.5 as an alternate basis for the circuit court's order. Therefore, we will not consider whether Rule 37 sanctions may have been proper in the instant case. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(c) (2001) (providing that a party's answering brief "shall be of like character as that required for an opening brief except that no statement of points shall be required, and no other section is required unless the section presented in the opening brief is controverted"); HRAP Rule 28(b)(4) (providing that, in an opening brief, "[p]oints not presented in accordance with this section will be disregarded"). (HRAP Rule 28 has since been amended, but the quoted sections have remained unchanged since the parties filed their briefs. *See* HRAP Rule 28 (2004).)

PGV could have argued that this court should affirm the circuit court's order pursuant to HRCP Rule 37 or Rule 26, even if sanctions were inappropriate pursuant to Rule 11 or Rule 16. *See State v. Taniguchi*, 72 Haw. 235, 240, 815 P.2d 24, 26 (1991) ("[W]e have consistently held that where the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action."). PGV's argument pursuant to Rule 26 would be rather weak because PGV's motion for sanctions did not include a claim for relief pursuant to Rule 26 (but rather asked for sanctions pursuant only to Rule 11, Rule 37, and the court's inherent power). PGV's argument for Rule 37 sanctions would be stronger (because PGV included arguments on Rule 37 in its motion for sanctions); nevertheless, we decline to convert the circuit court's Rule 11 order into a Rule 37 order because of the differing standards used in the two rules. For example, prior to its 2004 amendment, Rule 37(c) provided in part:
> If a party fails to admit ... the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves ... the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

This differs from the type of conduct sanctionable pursuant to HRCP Rule 11. *See* HRCP Rule 11 (1995) (providing that "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose").

20. Again, the circuit court did not make a specific finding as to whether Carlson contacted Dr. Legator in May 1995, but did find that Carlson "advis[ed][Gap] to register with Dr. Legator for an interview and evaluation."

1996, Carlson contacted Dr. Legator "regarding providing expert testimony and the progress of his survey of the population exposed to PGV's geothermal emissions." Carlson then listed Dr. Legator as an expert witness in his July 2, 1996 pretrial statement, stating that Dr. Legator would provide "[t]estimony concerning the health effects to Plaintiff and the surrounding community from exposure to PGV's emissions as based upon the review and analyses of the ongoing health and research study of the community." However, in November 1996 (after including Dr. Legator on his list of medical expert witnesses), Carlson learned that Dr. Legator's study would not be complete until after the expert witness deposition cut-off date, such that Dr. Legator would not be able to serve as an expert witness in Gap's case. According to Carlson, Dr. Legator's study was released sixty days after the deposition cut-off date, such that Dr. Legator was precluded from testifying in Gap's case.

#### ii. Janette D. Sherman, M.D.

Before filing the complaint, Carlson contacted Dr. Sherman to discuss Gap's condition. He also stated that he had worked with Dr. Sherman on similar cases in the past. In his pretrial statement, Carlson stated that Dr. Sherman would provide "[t]estimony concerning her review of medical records and finding[s] on over 100 other similarly exposed individuals in plaintiff's community. She will be asked to review plaintiff's medical records and to give an opinion on the significant contribution causes of that condition." However, at the time Carlson listed Dr. Sherman on his pretrial statement, he had not contacted Dr. Sherman in over a year and had not provided her with Gap's medical records. In November 1996, Dr. Sherman informed Carlson that her heavy work schedule would prevent her from evaluating Gap and from serving as an expert witness.

#### iii. Heajung Ruesing, M.D.

Dr. Ruesing was Gap's treating physician. According to Carlson, Gap told Carlson that Dr. Ruesing believed that PGV's emissions caused Gap's asthma. However, Carlson never spoke with Dr. Ruesing directly to confirm Dr. Ruesing's opinion; instead, Carlson claims to have communicated with Dr. Ruesing through Gap and through Dr. Ruesing's office manager. Carlson listed Dr. Ruesing as an expert witness in his pretrial statement on July 2, 1996; in the pretrial statement, he stated that Dr. Ruesing would give "[t]estimony concerning treatment of plaintiff for respiratory conditions related to the geothermal emissions in plaintiff's neighborhood, cost of treatment, future prognosis, training of plaintiff as a nurse and ruling out of other factors as causes." Carlson also included Dr. Ruesing in his list of expert witnesses on October 24, 1996. Carlson did not inform Dr. Ruesing that he listed her as an expert witness at all, let alone that he had listed her as an expert witness on the issue of medical causation. On December 9, 1996, after being informed that Carlson had listed her as an expert witness, Dr. Ruesing informed Carlson by letter that she was not qualified to testify as an expert on the issue of medical causation and that she would only testify as Gap's treating physician. In an affidavit dated April 24, 1997, Dr. Ruesing stated that she had never spoken directly with Carlson and that she "ha[d] never given an opinion that exposure to geothermal emissions was the cause of [Gap]'s asthma."

#### b. *The circuit court did not abuse its discretion in concluding that Carlson's investigation did not satisfy HRCP Rule 11.*

As we have stated, " '[i]n a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.' " *Enos v. Pac. Transfer & Warehouse, Inc.*, 79 Hawai'i 452, 459 n. 7, 903 P.2d 1273, 1280 n. 7 (1995) (quoting *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.*, 6 Haw.App. 431, 436, 726 P.2d 268, 271 (1986)). In the instant case, the circuit court did not abuse its discretion in concluding that Carlson violated HRCP Rule 11 in signing the pretrial statement.

Taken alone, we do not believe that Carlson's inclusion of Dr. Legator in his pretrial statement was unreasonable. Carlson spoke with Dr. Legator a few weeks before includ-

ing him in his pretrial statement, and, at that time, Dr. Legator indicated that he would serve as an expert witness so long as his study was completed in time. Carlson stated that Dr. Legator would testify as to "the health effects to Plaintiff and the surrounding community from exposure to PGV's emissions as based upon the review and analyses of the ongoing health and research study of this community." Carlson alleges that he contacted Dr. Legator in May 1995 and June 1996; he further alleges that Dr. Legator agreed to be an expert witness so long as his (Dr. Legator's) study was complete at the time Carlson needed his testimony. Although Dr. Legator did not complete his study in time and was unable to testify as an expert witness, Carlson's pre-filing investigation as to Dr. Legator was sufficient to satisfy HRCP Rule 11.

However, at the time Carlson filed his pretrial statement (thirteen months after filing the complaint), he had not even spoken with Dr. Ruesing, but instead had relied on his client and Dr. Ruesing's office manager to relay information. As the Eleventh Circuit explained:

> [U]nder Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit. [The attorney in the instant case] does not argue that he lacked the time to investigate the facts, that he was forced to rely solely on [the client] for information, or that he had to depend on forwarding counsel or another attorney. Absent such extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client, even if the client is a long-time friend.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir.1996) (citation omitted). *See also St. Amant v. Bernard*, 859 F.2d 379, 383 n. 15 (5th Cir.1988) ("An attorney may escape sanctions under rule 11 if he had to rely on a client for information about the facts underlying the pleadings."). In filing the pretrial statement naming Dr. Ruesing as an expert witness on the issue of medical causation, there is no reason why Carlson needed to rely on Gap for the information from Dr. Ruesing—he could have

contacted her directly. Although Carlson did speak with Dr. Ruesing's office manager, he could have spoken with Dr. Ruesing directly and avoided the situation that occurred (in which Dr. Ruesing stated that the first time she was contacted regarding testifying in Gap's lawsuit was November 1996 and that she never gave an opinion that PGV's emissions caused Gap's asthma).

Similarly, although Carlson was justified in relying on Dr. Sherman's statements at the time he filed Gap's complaint, he was not justified in including Dr. Sherman in the pretrial statement over a year later. Carlson admits that he did not provide Dr. Sherman with Gap's medical records before including Dr. Sherman in his pretrial statement. Furthermore, Carlson did not even speak with Dr. Sherman at any time between May 1995 and October 28, 1996 (when he listed her as an expert witness). Had Carlson contacted Dr. Sherman at some point between May 1995 and July 1996, he would have been better informed as to Dr. Sherman's availability and willingness to testify in Gap's case.

Consequently, the circuit court did not abuse its discretion in concluding that Carlson violated HRCP Rule 11 when he signed the pretrial statement (thirteen months after the complaint was filed) listing Dr. Ruesing and Dr. Sherman as Gap's expert witnesses on the issue of medical causation without making a reasonable investigation as to whether the doctors would agree to be expert witnesses in support of Gap's theory of medical causation at trial.

C. *Under The Circumstances Of This Case, The Circuit Court Abused Its Discretion In Awarding PGV $101,114.57 In Attorneys' Fees And Costs.*

Sanctions are mandatory for violations of HRCP Rule 11: "If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction[.]" HRCP Rule 11 (emphasis added). Nevertheless, because the circuit court erred in sanctioning Carlson for signing the complaint, CAAP exemption re-

quest, response to request for admissions, and list of experts, the circuit court abused its discretion in awarding sanctions of $101,114.57, PGV's entire defense costs from October 28, 1996 to April 2000. Rather than simply vacating the judgment and remanding for a redetermination of an appropriate sanction, though, we take a moment to offer some guidance to the circuit court on remand.

We first examine federal case law interpreting FRCP Rule 11 as it existed between 1983 and 1993 (when the language mirrored the language of HRCP Rule 11 before HRCP Rule 11 was amended in 2000), and we conclude that the primary purpose of HRCP Rule 11—even before its amendment in 2000—has consistently been deterrence, compensation being merely a secondary goal.[21] We then apply this principle to the circuit court's order in the instant case and conclude that the circuit court abused its discretion because it treated Rule 11 as a fee-shifting device rather than determining what an "appropriate sanction" would be.

1. **The primary purpose of the Rule is deterrence, not compensation.**

As this court has stated, " 'Where we have patterned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court.' " *Gold v. Harrison,* 88 Hawai'i 94, 105, 962 P.2d 353, 364 (1998) (quoting *Kawamata Farms v. United Agri*

*Prods.,* 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997)). In the instant case, the equivalent federal rule is FRCP Rule 11 as it existed from 1983 to 1993, such that federal case law from that time period will be helpful in examining the circuit court's ruling in the instant case. *Fujimoto,* 95 Hawai'i at 152 n. 21, 19 P.3d at 735 n. 21 ("The version of HRCP Rule 11 applicable to the present matter ... was identical to FRCP Rule 11 prior to the latter's amendment in 1993. Consequently, the federal cases interpreting the pre–1993 version of FRCP Rule 11 are relevant to our analysis in the present case.").

The purpose of Rule 11 is to deter, not to shift fees and costs from the moving party to the non-moving party. *See, e.g., Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419–20 (6th Cir.1992) (stating that "[t]he principal goal of Rule 11 sanctions is deterrence with compensation being a secondary goal"); *United States ex rel. Leno v. Summit Const. Co.,* 892 F.2d 788, 791 n. 4 (9th Cir.1989) ("Rule 11 'provides for sanctions, not fee shifting. It is aimed at deterring, and, if necessary punishing improper conduct rather than merely compensating the prevailing party.' ") (Quoting William W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 185 (1985).); *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) ("We have stated that, by awarding attorney fees to prevailing defendants in an

---

21. The 2000 amendment to HRCP Rule 11 altered the language regarding the nature of the sanction to be applied by the circuit court. In 1995 and 1996, HRCP Rule 11 provided in relevant part:

If a pleading motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Effective January 1, 2000, this passage was replaced by the following language:

*Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others

similarly situated. Subject to the limitations in subparagraphs (A) and (B) [not relevant in the instant case], the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

This amended version of HRCP Rule 11 mirrors the version of FRCP Rule 11 that has been in effect since 1993, whereas the pre-amendment version of HRCP Rule 11 mirrors the version of FRCP Rule 11 in effect from 1983 to 1993.

FRCP Rule 11 was also amended in 1987: the 1987 amendment changed the Rule's masculine pronouns to gender-neutral language but did not change the substance of the Rule. *See* Fed. R.Civ.P. 11 advisory committee's note (1987).

effort to discourage plaintiffs from bringing baseless actions or making frivolous motions, the Rule's primary purpose is not 'wholesale fee shifting but [rather] correction of litigation abuse.'" (Quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987).) (Brackets in original.)); *Anschutz Petroleum Mktg. Corp. v. E.W. Saybolt & Co.*, 112 F.R.D. 355, 357 (S.D.N.Y.1986) ("I do not regard Rule 11 as automatically imposing upon the sanctioned party or counsel liability for the full amount of the prevailing party's attorney's fees. That would be the result if the intended effect of Rule 11 was to do away with the 'American rules' of costs in all cases where Rule 11 sanctions are imposed.... But I do not believe that the rule has, or was intended to have, that effect." (Citation omitted.)); Fed.R.Civ.P. 11 advisory committee's note (1983) ("The word 'sanctions' in the caption ... stresses a deterrent orientation in dealing with improper pleadings, motions or other papers."); American Judicature Society, Studies of the Justice System, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11*, p. 12 (1989) (citing cases from the Fifth, Seventh, Ninth, and Eleventh Circuits for the proposition that "a number of courts of appeals have agreed that deterrence is the most important goal of amended [*i.e.* post–1983] Rule 11") (quoted and discussed in *Orlett*, 954 F.2d at 420). *But see Brubaker v. City of Richmond*, 943 F.2d 1363, 1373–74 (4th Cir.1991) ("In calculating the sanction, a district court should bear in mind that the purposes of Rule 11 include 'compensating the victims of the rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management.'" (Quoting *In re Kunstler*, 914 F.2d 505, 522 (4th Cir.1990).)). The 1993 amendment to FRCP Rule 11, therefore, did not represent a fundamental reconceptualization of the essential nature of Rule 11; instead, the amendment clarified the purpose of Rule 11 and, accordingly, clarified the primary purpose of sanctions ordered pursuant to Rule 11. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1336.3 (3d ed. 2004) ("The 1993 revision makes it clear that the main purpose of Rule 11 is to deter

improper behavior, not to compensate the victims of it or punish the offender. Accordingly, the present rule changes the emphasis with regard to the types of sanctions to be ordered by the district court." (Footnote omitted.)). However, as evidenced by the cases cited *supra*, that primary purpose—both before and after the 1993 amendment to FRCP Rule 11 (and the 2000 amendment to HRCP Rule 11)—has consistently been to deter improper conduct, not to shift fees from the losing party to the winning party. *See Buck*, 89 Hawai'i at 250, 971 P.2d at 723 ("The primary purpose of Rule 11 is to set a more demanding standard for establishing the propriety of court filings and deter baseless filings." (Citations and internal quotation signals omitted.)). *See also* Fed.R.Civ.P. 11 advisory committee's note (1983) ("The word 'sanctions' in the caption ... stresses a deterrent orientation in dealing with improper pleadings, motions, and other papers.").

### 2. The circuit court abused its discretion in ordering Carlson to reimburse PGV $101,114.57 for attorneys' fees and costs.

In its order, the circuit court concluded that PGV's attorneys' fees were "reasonable and were necessary for the defense of PGV under the circumstances." The circuit court did not, however, determine whether a sanction of $101,114.57 was an "appropriate sanction." Because the primary purpose of HRCP Rule 11 is deterrence, with compensation being merely a secondary goal, the circuit court should have determined the sanction that would have deterred this type of misconduct by Carlson and similarly situated attorneys in the future (rather than determining whether PGV's attorneys' fees were reasonable). Furthermore, the circuit court also failed to consider Carlson's ability to pay the sanction. *See, e.g., Orlett*, 954 F.2d at 419 ("The district court must ... determine the ability of the sanctioned attorney to pay."); *Doering*, 857 F.2d at 196 ("[W]hile a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive—or that might even

drive the sanctioned party out of practice."). *But see Christian v. Mattel, Inc.*, 286 F.3d 1118, 1125 n. 4 (9th Cir.2002) ("The Advisory Committee's notes concerning the [1993] amendments [to FRCP Rule 11] indicate that an attorney's financial wherewithal is only one of several factors that a district court may consider in deciding the amount of sanctions.... Nothing in Rule 11 mandates a specific weighing of this factor, however."). Consequently, the circuit court abused its discretion in setting the amount of the sanction.

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's June 18, 2002 final judgment and remand this case to the third circuit court for a determination of an appropriate sanction for Carlson's HRCP Rule 11 violation.

